UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE HOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00941-SRC |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

Denise Hogan seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying her protective application for disability benefits under Title II of the Social Security Act. For the following reasons, the Court affirms the Commissioner's decision.

## I. Procedural history

In April 2023, Hogan applied for benefits, alleging disability beginning February 12, 2023. Tr. 409–24. The Social Security Administration denied her claim initially and upon reconsideration. Tr. 300–05; Tr. 321–24. Then after a hearing in June 2024, Tr. 193–218, and another in November 2024, Tr. 219–61, the ALJ denied Hogan's claim on December 3, 2024, Tr. 136–58. Hogan appealed the ALJ's decision to the Appeals Counsel. Tr. 404–06. The Appeals Counsel denied her request for review. Tr. 1–7. Thus, the ALJ's decision became the

Commissioner's final decision, which this Court reviews, *see* 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

## II. Standard for determining disability under the Act

Under the Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] . . . [that] significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)). While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."

20 C.F.R. § 404.1545(a)(3). If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden shifts to the Commissioner to produce evidence showing the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

## III. The ALJ's decision

Applying this framework, the ALJ stated that:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering [Hogan's] age, education, work experience, and [RFC], [Hogan] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . . .

Tr. 153. The ALJ thus concluded that Hogan "has not been under a disability . . . from February 12, 2023, through the date of [the ALJ's] decision." *Id.*

First, the ALJ found that Hogan had "not engaged in substantial gainful activity since February 12, 2023[.]" Tr. 138. The ALJ then found that Hogan had the following severe impairments: (i) "cerebrovascular accident[,]" (ii) "seizure disorder," (iii) "thrombocytopenic purpura," and (iv) "obesity." Tr. 139. Next, the ALJ found that none of these impairments

individually, or in combination, met or medically equaled the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. Tr. 143. The ALJ, "[a]fter careful consideration of the entire record," then found that:

> [Hogan] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, occasionally balance, and frequently stoop, kneel, crouch and crawl. She can frequently reach overhead, in front and/or laterally using the bilateral upper extremities, and she can frequently handle and finger using the bilateral upper extremities. She must avoid concentrated exposure to extreme heat, vibration, fumes, odors, dusts, gases, poor ventilation, and must avoid all exposure to hazards such as moving machinery and unprotected heights.

Tr. 144. The ALJ then found that Hogan cannot "perform any past relevant work." Tr. 151. But after "[c]onsidering [Hogan's] age, education, work experience, and [RFC]," he found that "there are jobs that exist in significant numbers in the national economy that [Hogan] can perform[.]" Tr. 152. The ALJ therefore concluded that Hogan is not disabled. Tr. 153.

## IV. Standard of review

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports her decision. 42 U.S.C. §§ 1383(c)(3), 1405(g). If it does, the Court must affirm the decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial

evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

## V. Discussion

Hogan makes four arguments for remand. First, she claims that the ALJ failed to properly evaluate the medical-opinion evidence. Doc. 15 at 3–7 (The Court cites to page numbers as assigned by CM/ECF.) Second, the ALJ failed to properly evaluate her subjective pain. *Id.* at 7–10. Third, the ALJ failed to find that her mental-health impairments are severe. *Id.* at 10–12. And fourth, the ALJ's RFC finding lacked substantial evidence to support it. *Id.* at 12–13. The Court addresses each in turn.

### A. ALJ's alleged failure to properly evaluate the medical-opinion evidence

Hogan first contends that when evaluating the medical-opinion evidence, the ALJ "used the words support and consistent[,] but failed to provide any actual explanation of how they were considered, what specific objective evidence or supportive explanation was considered[,] or how other evidence of record was consistent or not with the RFC limitations suggested by the doctors." *Id.* at 6. And "[b]ecause the ALJ failed to properly evaluate the supportability and consistency of medical evidence of record the RFC and the decision are not supported by substantial evidence[.]" *Id.* at 7.

Section 404.1520c explains how ALJs must consider medical opinion and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c. The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative finding(s), including those from [plaintiff's] medical sources." *Bonham v. Bisignano*, 177 F.4th 934, 944 (8th Cir. 2026) (quoting 20 C.F.R. § 404.1520c(a)). Instead, the "ALJ must evaluate the medical opinion according to the factors listed in [section] 404.1520c(c)." *Id.* (citing C.F.R. § 404.1520c(c)). The "most important factors" ALJs consider when evaluating "the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a).

"Turning first to supportability, '[t]he more relevant the objective medical evidence and supporting explanations' are that support a medical opinion, 'the more persuasive' it will be" to the ALJ. *Bentley v. Kijakazi*, No. 22-2883, 2023 WL 3862562, at *1 (8th Cir. June 7, 2023) (per curiam) (alternation in original) (citing 20 C.F.R. § 404.1520c(c)(1)). And for "consistency[,]" the "more consistent a medical opinion is with evidence from other sources, the more persuasive it will" also be to the ALJ. *Id.* at *2 (citing 20 C.F.R. § 404.1520c(c)(2)). When examining the medical-opinion evidence, the ALJ need not "explicitly reconcile every conflicting shred of medical evidence." *Id.* (quoting *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022)).

Instead, the ALJ's "reasoning need only be clear enough to allow for appropriate judicial review." *Id.* (quoting *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021)). "The ALJ's brevity is not reversible error." *Grindley*, 9 F.4th at 631. For instance, in *Sloan*, the ALJ explained that his conclusion was "based on the credible testimony of the vocational expert." *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019). The Eighth Circuit held that deficiencies in opinion writing are not "sufficient reason[s] for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Id.* (cleaned up) (citation omitted). Thus, any argument that the "conclusory form of the ALJ's decision alone justifies remand" lacks merit. *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

**1. Dr. Schell and Dr. Costley**

Hogan first argues that the ALJ didn't evaluate the supportability and consistency of Dr. Schell and Dr. Costley's findings, because "the ALJ fail[ed] to provide any actual examples of how the opinions are supported or what evidence is consistent with the RFC limits." Doc. 15 at 5; *see id.* at 4. The Court disagrees.

The ALJ considered Schell's "Disability Determination Explanation" in developing Hogan's RFC. Tr. 149. The ALJ found that Dr. Costley's findings echoed Dr. Schell's findings. *Id.* The ALJ found that their findings were "generally persuasive" because they "support[ed] their findings with a narrative explanation, including cites to examination findings and imaging[,]" and because their "findings are overall consistent with the record as a whole." *Id.*

The ALJ explained that "[s]ince hospitalization for TTP, as well as [Hogan's] seizure activity and stroke findings, [Hogan] has described persistent symptoms including pain, headaches, numbness and tingling in her upper extremities, and some balance issues." *Id.* And that "[w]ith some times [sic] of compliance issues with medication, [Hogan] has suffered additional seizures, and reported times of weakness, fatigue, and confusion post seizure." *Id.* But the ALJ concluded that "examination has also revealed intact strength, hand and finger dexterity, and intact grip strength, as well as normal gait." *Id.* The ALJ, "[b]alancing such information," found that these findings were "generally persuasive." Tr. 150. Hogan "seeks a level of explanation not required by the regulations." *Bauer v. Kijakazi*, No. 4:21-cv-176-MTS, 2022 WL 1136140, at *4 (E.D. Mo. Apr. 18, 2022).

**2. Dr. Singh**

Hogan makes a similar argument regarding Dr. Singh—Hogan's provider. She states that the ALJ "used the words support and consistent but failed to provide any actual explanation of

how they were considered, what specific objective evidence or supportive explanation was considered or how other evidence of record was consistent or not with the RFC limitations suggested by the [other] doctors." Doc. 15 at 6. Again, Hogan's argument lacks merit.

Dr. Singh completed a "Seizures Residual Functional Capacity Questionnaire." Tr. 1842–45. Dr. Singh stated that while Hogan's seizures have precipitating factors like overstimulation or overheating, she doesn't always have a warning of impending seizures. Tr. 1842; Tr. 150. Dr. Singh stated that on average a typical seizure lasts one to three minutes. Tr. 1842. Dr. Singh also stated that Hogan's seizures are "disabling[,]" and the symptoms can last "up to one day." Tr. 1843; Tr. 150. Dr. Singh therefore concluded "that her seizures were likely to disrupt the work of co-workers, that she would need more supervision than an unimpaired worker, and she would need unscheduled breaks of unknown frequency and duration." Tr. 150; *see* Tr. 1844.

But the ALJ concluded that Dr. Singh's findings were "not persuasive and also vague." Tr. 150. As to supportability, the ALJ stated that Dr. Singh "attempt[ed] to support his findings with a narrative explanation and his history with the claimant" but he did "not know [Hogan's] specific limitation in several areas, including frequency of unscheduled breaks, length of unscheduled breaks, or how she would be able to tolerate work stress." *Id.*; *see* Tr. 1844. And as to consistency, the ALJ found that Dr. Singh's "findings [were] not consistent with the record as a whole and are not expressed in fully vocationally relevant terms." Tr. 150; *see* Tr. 1844. The ALJ explained that the "records often indicate[d] benign physical examination findings after recovery from her hospitalization and seizures":

> This includes consultative findings of normalized gait with longer walking, the ability to walk on her heels and toes without difficulty, normal tandem walk, negative Romberg, the ability to stand and bounce on her legs, the ability to fully squat, normal stance, no difficulty getting on and off the exam table, no sensory

> deficit, normal strength in the upper and lower extremities, normal grip strength, intact hand and finger dexterity, and stable and nontender joints. However, [Hogan] had decreased range of motion of the neck due to pain, decreased shoulder range of motion, and thigh pain with supine and seated straight leg raise (Exhibit 3F). During psychological consultative examination, [Hogan] was also noted to have gait and coordination that appeared within normal limits (Exhibit 4F/4).

Tr. 150. "Balancing this information," the ALJ concluded that Dr. Singh's findings were unpersuasive. Tr. 150. Hogan again "seeks a level of explanation not required by the regulations." *Bauer*, 2022 WL 1136140 at *4. The ALJ's reasoning is "clear enough to allow for appropriate judicial review." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (citation omitted).

As noted above, the ALJ provided "good reasons" for his decision regarding "the weight" given to Hogan's "treating source's medical opinion." 20 C.F.R. § 404.1527. "The ALJ's evaluation of supportability" and consistency, "and [his] articulation of his consideration of all of the medical opinions in the administrative record complie[d] with [20 C.F.R.] § 404.1520c." *See Cropper*, 136 F.4th at 815; *cf. Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (finding remand warranted where the ALJ adequately evaluated supportability of plaintiff's treating physician, but "did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation").

### 3. Dr. Markway and Dr. Akeson

Next, Hogan challenges the ALJ's evaluation of Dr. Markway and Dr. Akeson's psychological evaluations on the same grounds. Doc. 15 at 6. Hogan argues that "[h]ere, again, the ALJ has used the words supportability and consistency, but failed to provide explanation of how any specific evidence supported or was consistent with the specific opinion findings." *Id.* The Court likewise disagrees.

The ALJ stated that Dr. Markway found "her mental allegations resulted in mild limitations in all 'paragraph B' areas of functioning." Tr. 141 (citing exhibits 3A and 4A). And "[a]t the reconsideration level," Dr. Akeson "echoed these findings." *Id.* (citing exhibits 7A and 8A). The ALJ found their findings persuasive. *Id.* As to supportability, the ALJ first noted that "both experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations." *Id.* And "they supported their conclusions with analysis of the evidence available to them when these findings were made, including Function Reports and the psychological consultative examination." Tr. 141–42 (citing exhibits 3A, 4A, 7A, 8A).

As to consistency, the ALJ stated that the findings of Drs. Markway and Akeson were "generally consistent with the record as a whole[.]" *Id.* "Although [Hogan] has reported memory difficulties," the ALJ noted that "multiple indications of appropriate and normal behavior upon examination" existed in the record. *Id.* In particular, the ALJ noted that the record supports that Hogan "demonstrates an ability to follow conversations, is pleasant and cooperative, and has often normal examinations, except for times of deficit in affect and mood." *Id.* Citing to several exhibits, the ALJ also found that Hogan "is often reported to be alert and oriented." *Id.* "Given the balance of the evidence," the ALJ therefore concluded that the findings of Dr. Markway and Dr. Akeson findings were "overall persuasive." *Id.* For the same reasons explained above, the ALJ properly evaluated the supportability and consistency of Dr. Markway and Dr. Akeson's findings. *See Bauer*, 2022 WL 1136140 at *4.

**4. Dr. Coulter**

Hogan challenges the ALJ's evaluation of Dr. Coulter's evaluation on the same grounds. Doc. 15 at 6–7. Hogan argues that the ALJ "provided general statements about supportability

and consistency but fail[ed] to provide any actual references to any evidence that supports the opinion or is consistent with the opinions." Doc. 15 at 7. For the same reasons noted above, the Court disagrees.

The ALJ stated that Dr. Coulter "reported [Hogan] has mild impairment in understanding, remembering, or applying information and appeared to have concrete cognitive abilities to learn, recall, and use information to perform work activities and likely do best in entry level jobs with repetitive tasks and no need for complex decision making." Tr. 142. And Dr. Coulter reported that Hogan had "mild impairment in [her] ability to adapt and manage herself, but that she would be able to control her behavior and maintain appropriate well-being in a work setting." *Id.* Finally, Dr. Coulter found that Hogan, however, "had no impairment in interacting with others or in concentrating, persisting, and maintaining pace." *Id.*

As to supportability, the ALJ found that Dr. Coulter "support[ed] her findings with a narrative explanation and the ability to personally observe and examine [Hogan]." *Id.* And as to consistency, the ALJ found, citing to several exhibits, that Dr. Coulter's report was "generally consistent with the record as a whole," and noted that Hogan's RFC warrants "increased limitations to mild for interacting with others and concentrating, persisting, and maintaining pace." *Id.* "Given the balance of the evidence," the ALJ again concluded that Dr. Coulter's "findings are overall persuasive," and that certain "mild limitations" on Hogan's RFC were appropriate. *Id.* For the same reasons explained above, the ALJ properly evaluated the supportability and consistency of Dr. Coulter's findings. *See Bauer*, 2022 WL 1136140 at *4. Having resolved Hogan's challenge to the ALJ's alleged failure to properly evaluate the medical-opinion evidence, the Court turns to Hogan's next argument.

**B. ALJ's alleged failure to properly evaluate Hogan's subjective complaints**

Hogan argues that the ALJ's decision "appears to have only considered [her] minimal activities of daily living when evaluating [her] statements and credibility[.]" Doc. 15 at 10. Therefore, Hogan argues that the ALJ's "decision is not supported by substantial evidence[.]" *Id.* The Court disagrees.

"An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted). "Credibility determinations are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility, [courts] will defer to [the ALJ's] decision." *Id.* (citation omitted).

"When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors[.]" *Id.* (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). And the *Polaski* factors include "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Id.* (first citing *Polaski*, 739 F.2d at 1322 and then citing 20 C.F.R. § 416.929(c)).

But while the ALJ must take "[t]hese considerations . . . into account," courts "have not required the ALJ's decision to include a discussion of how every *Polaski* 'factor' relates to the claimant's credibility." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007). Instead, the ALJ must only recognize and consider *Polaski*'s "analytical framework." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004); *see Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000) (finding that though the ALJ had not explicitly articulated his credibility determination, [he] did so

implicitly by evaluating the claimant's testimony under the *Polaski* factors and by identifying inconsistencies between the claimant's statements and the evidence in the record).

Here, the ALJ considered Hogan's ability "to participate in various typical activities of daily living." Tr. 145. But contrary to Hogan's assertion, the ALJ also considered the "objective evidence contained in the medical evidence and other evidence of record, as well as statements and other information provided by medical sources and others." *Id.* For instance, the ALJ explained that Hogan's subjective complaints regarding her (i) "activities of daily living," (ii) "measures taken to alleviate symptoms," and (iii) "the location, duration, frequency, and intensity of symptoms[,]" were "not wholly consistent" with the "objective record[.]" *Id.*

Instead, "the objective record" showed that Hogan "is capable of performing work-related tasks within limitations of [her RFC]." Tr. 145. The ALJ then proceeded to consider the objective evidence that was not wholly consistent with Hogan's claims. *See* Tr. 146–49; *see also* doc. 18 at 9–11. And "[a]fter careful consideration of the evidence" the ALJ found that while Hogan's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Hogan's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 144–45. Therefore, having carefully reviewed the ALJ's evaluation of Hogan's subjective complaints, the Court concludes that substantial evidence supports his decision. *See Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." (citation omitted)).

### C. ALJ's alleged failure to properly identify Hogan's mental impairments as severe

Hogan argues that the ALJ erred when he found Hogan's mental-health impairments were not severe. Doc. 15 at 10–12. As stated above, at step two, if the claimant is not engaged in substantial gainful activity, the ALJ evaluates the evidence to determine whether the claimant has a severe "impairment[] . . . [that] significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)); *see* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.") And "basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

The ALJ found that "[Hogan's] medically determinable mental impairments considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." Tr. 139. The ALJ reached this conclusion after considering the record evidence and the four "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments." Tr. 139; *see* 20 C.F.R. § 404.1520a(c)(3) (identifying the "four broad functional areas" as a claimant's ability to (i)"[u]nderstand, remember, or apply information (ii) "interact with others" (iii) "concentrate, persist, or maintain pace" and (iv) "adapt or manage oneself"). The ALJ then applied the record evidence to each broad functional area. *See* Tr. 140–42.

Hogan doesn't dispute this. Instead, Hogan again objects to the ALJ's conclusion that the findings of Drs. Markway and Akeson findings were persuasive. Doc. 15 at 11. Hogan asserts that the "ALJ's evaluation of the opinions fails to explain what evidence the ALJ actually considered or how that evidence supported the opinions." *Id.* But again, the record belies

Hogan's argument. As discussed above, the ALJ properly evaluated the supportability and consistency of the doctors' findings. *Supra*, Part V.A.3. Hogan again "seeks a level of explanation not required by the regulations." *Bauer*, 2022 WL 1136140, at *4.

And while the Court doesn't dispute that Hogan reported her mental-health symptoms, *see* doc. 15 at 10–11, and that she was diagnosed with certain mental-health conditions, *see id.* at 11, that doesn't necessarily mean that her mental-health impairments are "severe" under the regulations. *See* 20 C.F.R. § 404.1522(a). The ALJ considered several medical opinions that supported the view that Hogan's mental-health impairments were not severe. Tr. 141–42, 265–66, 273–74, 283–84, 292–93. The ALJ also explained that Plaintiff declined a psychiatry referral. Tr. 139–40; *see* also Tr. 1219, 1856, 1868. And on two occasions where she reported worsening anxiety, it was after she had stopped taking prescribed medication. Tr. 140, 1325, 1636–37.

The ALJ's conclusions fall within a fact finder's "zone of choice[.]" *Bradford v. O'Malley*, 104 F.4th 1055, 1060 (8th Cir. 2024); *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [it] been the fact finder in the first instance."). The Court therefore concludes that substantial evidence supports the ALJ's finding that Hogan's mental-health impairments were not severe. *See Goff*, 421 F.3d at 789.

**D. ALJ's RFC finding is supported by substantial evidence**

Lastly, Hogan argues that the ALJ's RFC finding is unsupported by substantial evidence because "[t]he RFC . . . is word for word the same RFC as was provided by Dr. Schell and Dr. Costley . . ., with the addition[al limitation] of no concentrated exposure to extreme heat and frequently handle and finger." Doc. 15 at 12. (emphasis omitted). But "no explanation [exists,]"

Horgan argues, for "how limiting [her] to 'frequent' handling would not aggravate her symptoms, but that constant use would." *Id.* at 13.

But Hogan bears the burden "to prove her RFC." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). And Hogan cites no evidence that demonstrates that she was incapable of frequent handling and fingering. *See* doc. 15 at 13. In contrast, several examinations were negative for a hand tremor. Tr. 53, 86, 627, 641, 697, 1268, 1364, 1416, 1713. And evidence suggested that Hogan's grip strength was intact. Tr. 704–55, 1268. Thus, Hogan's argument that substantial evidence doesn't support the RFC—because the ALJ chose to impose additional limitations beyond those assessed by Dr. Schell and Dr. Costley—lacks merit. *See Goff*, 421 F.3d at 789. Although "a claimant's RFC is a medical question, . . . there is no requirement that an RFC finding be supported by a specific medical opinion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (citation omitted); *see also* 20 C.F.R. § 404.1520c(a). And so "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Schmitt*, 27 F.4th at 1360 (citation omitted).

Thus, because the "ALJ's [RFC] determination[]" was "supported by good reasons and substantial evidence," the Court will not "reweigh the evidence presented to the ALJ." *Reece*, 834 F.3d at 908 (citation omitted). "Whether the ALJ should have provided additional limitations," the Eighth Circuit has explained, "amounts to a disagreement over the weighing of evidence within the record," which "is not this Court's role." *Austin*, 52 F.4th at 731 (emphasis omitted) (citation omitted).

## VI. Conclusion

Accordingly, the Court affirms the Commissioner's decision and dismisses with prejudice Hogan's [1] Complaint. A judgment accompanies this Memorandum and Order.

So ordered this 19th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE